1 | PAUL J. DOMBECK, ESQ.
Arizona State Bar No. 022418
2 | TATIANA M. FROES, ESQ.
Arizona State Bar No. 022447
3 | THE LAW OFFICE OF PAUL J. DOMBECK, PLLC
18444 N. 25th Ave., Ste 420
4 | Phoenix, AZ 85023
telephone (602) 648-2035
5 | facsimile  1-866-648-2128
pdlaw@disabilityarizona.com
6 |
Attorneys for Plaintiff
7 |

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Gilliland Hughes, ) | |
| ) | |
| Plaintiff, ) | No. |
| ) | |
| v. ) | |
| ) | |
| ) | **COMPLAINT** |
| ) | |
| Lincoln Life Assurance Company of ) | |
| Boston, f/k/a Liberty Life Assurance ) | |
| Company of Boston, ) | |
| ) | _____ |
| Defendant. ) | |
| _____ ) | |

Comes now the Plaintiff, Barbara Gilliland Hughes, and by her attorneys, Paul J.
Dombeck and Tatiana M. Froes, and complaining against defendant, Lincoln Life
Assurance Company of Boston, f/k/a Liberty Life Assurance Company of Boston
states:

## JURISDICTION AND VENUE

### I.

Jurisdiction of the court is based upon the Employee Retirement Income Security Act

of 1974 (ERISA); and in particular, 29 U.S.C.§§1132(e)(1) and 1132(f).  Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of employee welfare benefit plans which, in this case, consists of group short term and long term disability benefit plans to employees of Liberty Mutual Group, Inc., ("Liberty Mutual") set forth as Liberty Mutual Group, Inc. Group Disability Policy Long Term Disability Plan ("Plans" or "Plan(s)" or "Plan") administered and/or adjudicated by Liberty Mutual's affiliated and/or parent company and Plan Fiduciary: Lincoln Life Assurance Company of Boston, f/k/a Liberty Life Assurance Company of Boston ("Lincoln Life"), provided by Liberty Mutual and/or Lincoln Life to plaintiff Barbara Gilliland Hughes, one of its employees.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

II.

The ERISA statute provides, at 29 U.S.C.§1133, a mechanism for administrative or internal appeal of benefit denials.  Those avenues of appeal have been exhausted.

III.

Venue is proper in the Phoenix District of Arizona.  29 U.S.C.§§1132(e)(2), 28 U.S.C. §1391, ERISA § 502(e), because the "breach" of the subject disability benefit Plans occurred in Maricopa County, Arizona, and because defendant may be found in Maricopa County Arizona.

**NATURE OF ACTION**

IV.

This is a claim seeking an award to Plaintiff of disability income benefits pursuant to the aforereferenced subject Plans, said Plans designated in Plan Documents as  Plan Number 511 and Claim Numbers 6040292 (STD) and 8560189

1  (LTD), by Lincoln Life, providing group Short Term Disability ("STD") and Long Term

2  Disability ("LTD") benefits to employees of Liberty Mutual; said Plans are provided

3  by Liberty Mutual and administered by Lincoln Life under group control numbers

4  and/or policy numbers not limited to Plan Number 511 and Claim Numbers 6040292

5  (STD) and 8560189 (LTD).  This action, seeking recovery of benefits, is brought

6  pursuant to §502(a)(1)(B) of ERISA 29 U.S.C. §1132(a)(1)(B).

7

8  **THE PARTIES AND THE DISABILITY PLANS**

9  V.

10  That the Plaintiff is a resident of the County of Maricopa, State of

11  Arizona, and has been at all times hereinafter stated.

12  VI.

13  That the Plans, as described in the Plan(s) document(s), are, upon

14  information and belief, welfare benefit plans providing respectively Group Short Term

15  Disability and Group Long Term Disability for employees of Liberty Mutual.

16  VII.

17  That Plaintiff's Employer, Liberty Mutual, is a Plan fiduciary per Section

18  402(a) of ERISA, and upon information and belief, is a Massachusetts corporation

19  licensed to and doing business in Arizona, and further, that Defendant Lincoln Life,

20  is a Massachusetts corporation licensed to and doing business in Arizona.

21  VIII.

22  That Lincoln Life Assurance Company acquired Liberty Life Assurance

23  Company of Boston on or about May 1, 2018 from Liberty Mutual Assurance Group,

24  thereby assuming its predecessor's duties and obligations toward Plaintiff, and herein

25  "Defendant" is inclusive of both Lincoln Life and it's predecessor; and further that

26  Lincoln Life Assurance Company of Boston, f/k/a Liberty Mutual Assurance Company

27  of Boston is the LTD Plan administrator for and/or maintains health care coverages

28  that are funded through Plan Number 511 and/or Claim Number 8560189, issued by

Liberty Mutual and/or through affiliation by Lincoln Life and/or its predecessor; that claims upon said coverages are in actuality functionally administered and/or adjudicated by Lincoln Life, and that Liberty Mutual was at all times relevant the employer of Plaintiff Barbara Gilliland Hughes.

IX.

That as claims adjudicator, defendant Lincoln Life reviews disability claims for the purpose of approving, adjusting, denying or issuing benefits, based upon information that Lincoln Life and Liberty Mutual generate.

X.

That the Plaintiff, as an employee of Liberty Mutual was eligible for certain employee benefits, including disability plans and policies, as per the terms and conditions of the written Plans, as outlined on Summary Plan Description brochures and/or Group Benefit Plan documents offered to, disseminated amongst and granted to employees of Liberty Mutual, including but not limited to the benefits described as a Group Policy contract through Liberty Mutual and Barbara Gilliland Hughes as a subscriber to the Plan number 511; and that the plaintiff elected and/or was provided buy-up options for LTD benefit coverages paying 60% of monthly gross salary, and paid all premiums therefor as required.

XI.

At all times relevant hereto, the subject Plan constituted "employee welfare benefit plan(s)" as defined by 29 U.S.C. §1002(1); and incident to her employment, plaintiff Barbara Gilliland Hughes received coverage under the Plan(s) as a "participant" as defined by 29 U.S.C. §1002(7).  This claim relates to benefits under the foregoing Plans.

XII.

On or about August 29, 2005, Ms. Gilliland Hughes initially began working for Liberty Mutual, in Phoenix, Arizona, and from that date until approximately January of 2012, held various job titles at the light to sedentary exertional levels, at

1  which time she was on medical leave until approximately October of 2012 for spinal

2  surgery, at which point she returned to Liberty Mutual at the position of 'Senior Claims

3  Adjuster Resolution Specialist for Bodily Injury'; a position which required her to work

4  at the highest level of acuity to manage, investigate and process injury claims; duties

5  which included investigation of claims, preparation of files and appearances at

6  depositions and hearings and settlement conferences, policyholder communications,

7  and ability to sustain and manage work in a fast paced environment.

8

9                              **STATEMENT OF FACTS**

10                                      XIII.

11           At all appropriate times, Barbara Gilliland Hughes was a full-time

12  employee of Liberty Mutual, and she was actively employed at Liberty Mutual until on

13  our about July 4, 2018 when she ceased working because of Rheumatoid Arthritis

14  and other ailments.  From July 4, 2018 until the present Barbara Gilliland Hughes has

15  not engaged in any substantial gainful activity.

16                                      XIV.

17           On or around July 4, 2018, and while still maintaining status as a Liberty

18  Mutual employee, Plaintiff Barbara Gilliland Hughes made a timely application under

19  the afore-referenced Short Term Disability (STD) Plan, under claim number(s) not

20  limited to 6040292, stating that on or about July 4, 2018, Plaintiff Gilliland Hughes

21  met the subject STD Plan's definitions of disability on account of medical conditions

22  which rendered her unable to perform all the material and substantial duties of her

23  own occupation because of injury or sickness.

24                                      XV.

25           Said medical conditions were chiefly Rheumatoid Arthritis (RA) causing

26  severe fatigue and weakness that systemically degraded body function, including

27  upper extremity handling, reaching, strength and grip, and left the plaintiff prone to

28  infections because of immuno-suppressors required to treat the RA condition, for

which the plaintiff received medical treatment that could not sufficiently alleviate her symptoms and the functional restrictions flowing therefrom, wherein Plaintiff presented that medical evidence to support her claim for the STD benefits, certifying her conditions, restrictions and limitations.

XVI.

Based upon the plaintiff's referenced benefits application and supporting evidence Lincoln Life initially awarded the plaintiff the STD benefits from July 11, 2018, and paid said benefits through December 21, 2018, just short of the maximum 120-day STD benefit payment duration limitation, contemporaneously with which the plaintiff completed and/or Lincoln Life and/or its predecessor recognized a timely application from Plaintiff for the Plans' LTD benefits.

XVII.

The subject LTD Plan for the first 18 months of benefits coverage defines total disability under an "Own-Occupation" definition, providing in pertinent part that: " ...the employee is unable to perform all the material and substantial duties of his or her own occupation because of injury or sickness"; and then narrows following the Eighteen (18th) month of benefits to require that the claimant "is unable to perform with reasonable continuity, the material and substantial duties of any occupation for which he or she is or becomes reasonably fitted by training, experience, age, physical and mental capacity".

XVIII.

During Lincoln Life's review of Plaintiff Gilliland Hughes' initial LTD benefits claim application under the LTD Plan's applicable "own occupation" disability period, Lincoln Life, retained 'paper-review' consultants to review the Plaintiff's medical records and write consultative opinions, pursuant to which, without ever physically examining or meeting the plaintiff, said consultants opined that the plaintiff could sustain full-time work, pursuant to which in turn Lincoln Life, in a letter dated January 25, 2019, denied Plaintiff Gilliland Hughes' claim.

XIX.

On or about May 4, 2019 plaintiff Barbara Gilliland Hughes submitted to Defendant Lincoln Life, in accordance with 29 U.S.C. § 1133, an administrative appeal of the January 25, 2019 denial of her LTD benefits.  In support of this appeal, Plaintiff Gilliland Hughes submitted additional medical evidence from treating and examining physicians, demonstrating substantially that her condition had not improved, and that her condition precluded her from performing not only her own occupation, but also any other occupations, and thereby that at all relevant times she had met and continued to meet the Plan(s)' requisite disability definitions.

XX.

Following her May 4, 2019 appeal of the January 2019 denial, Lincoln Life obtained further opinions from paper-review consultants who continued to opine that the plaintiff could sustain full-time work, in response to which, on or about August 9, 2019, Plaintiff Gilliland Hughes submitted to Lincoln Life a further response advising Lincoln Life that their consultant (Malcolm McPhee M.D.) had failed to acknowledge conditions and diagnoses that diminished her ability to sit and that limited her range of motion and increased her pain levels.

XXI.

In response to all of Plaintiff Gilliland Hughes' appeal evidence, on or around October 7, 2019, Lincoln Life granted benefits for only a closed retroactive period between December 21, 2018 to April 23, 2019, and denied benefits beyond April 23, 2019, alleging that plaintiff Gilliland Hughes had not to their satisfaction demonstrated sufficient functional restriction beyond April 23, 2019.

XXII.

On or about April 3, 2020, Barbara Gilliland Hughes submitted to Defendant Lincoln Life, in accordance with 29 U.S.C. § 1133, an administrative appeal of Lincoln Life's October 7, 2019 denial of her LTD benefits.  In support of this appeal, Plaintiff Gilliland Hughes submitted ongoing and additional medical evidence

from treating and examining physicians and also from new and/or additional functional and vocational sources, substantially demonstrating that her condition during the at-issue time periods had not improved, and specifically explaining how and why her condition precluded her from performing her own occupation and /or also any alternative occupations during all at-issue time periods, demonstrating thereby that at all relevant times she met and continued and continues to meet the Plan's requisite disability definitions.

XXIII.

In her April 3, 2020 appeal the Plaintiff specifically advised and explained to Lincoln Life that it was apparent that Lincoln Life and its consultants distorted alleged conversations with Plaintiff's treating physicians; and continued to ignore evidence of restrictions of functional limitation and to ignore vocational evidence that the plaintiff could not sustain any type of competitive employment, and that said consultants had failed to sufficiently, properly and meaningfully consider evidence of the plaintiff's physical limitations.

XXIV.

In support of her April 3, 2020 appeal, the plaintiff also specifically and in writing brought the defendant's attention to each of the following facts and issues: **A)** That a Lincoln Life paper-review consultant (Malcolm McPhee M.D.) had proposed a set of "light duty" restrictions without ever examining the claimant in person, and by claiming the Plaintiff's treating Rheumatologist (Wassem Allabban M.D.) supposedly agreed with him that the Plaintiff had no significant restrictions; whereas having learned of this Dr. Allabban indicated that his words were distorted by consultant McPhee elicit a message contrary to what Allabban intended, and pursuant to which Dr. Allabban then also provided a Residual Functional Capacity Report confirming his assessment that Ms. Gilliland Hughes has severe restrictions and limitations, and detailing what those were;

**B)** That paper-reviewer McPhee had based his assessment of "Light Duty" capacity

on his biased review of the evidence and had neither examined nor met the plaintiff, while Dr. Allabban had been treating the plaintiff for three (3) years and is considerably more familiar with her treatment and limitations; with Dr. Allabban also indicating that his consultative progress notes reflected that the plaintiff's condition was not 'stable' as alleged by McPhee and Lincoln Life;

**C)** That following McPhee's and Lincoln Life's complaint that the plaintiff had not demonstrated sufficient restrictions and limitations, the plaintiff had undergone a three-hour functional examination which readily measured and clarified the work-preclusive restrictions that the plaintiff could not sustain more than four hours of work in any postural position, and with severe restrictions in sitting and standing capacity and upper extremity limitations, and also that this was the conclusion following an extensive physical examination in which the examiner noted that the plaintiff was having one of her 'better days' at the time of the examination;

**D)** That paper-reviewer McPhee had concluded that the plaintiff suffered no side effects from medications while ignoring evidence of injection site complications present throughout her medical records, and that the immuno-suppressants the plaintiff had to take to try to stabilize her RA condition left her prone to infections pursuant to which she was actually hospitalized for Pneumonia and Coccidiomycosis (Valley Fever) soon after Lincoln Life's October 7, 2019 denial;

**E)** That following the plaintiff's initial May 4, 2019 appeal, Lincoln Life's other paper-review consultant (Taraneh Mehrani M.D.) had alleged the plaintiff had no restrictions based on a treating doctor reducing immunosuppressant medication without acknowledging that those suppressants were only reduced following the plaintiff's hospitalization for Pneumonia and Valley Fever so as to facilitate Plaintiff's recovery from those severe infections;

**F)** That Lincoln Life's October 2019 denial had relied in pertinent part on the only plaintiff treating physician to assess no work restrictions, without acknowledging that this doctor was merely the plaintiff's podiatrist, and that his no-restrictions opinion

1   was limited to the plaintiff's foot and ankle;

2   **G**) That Lincoln Life's own vocational analyst had concluded that the plaintiff's
3   position would require at least frequent sitting and that her functional capacity would
4   essentially be relegated to part-time, and that said analyst had not indicated that she
5   could sustain the full-time work at-issue under the operative definition of the subject
6   Plan; and that the plaintiff's own Vocational Expert who not only interviewed the
7   plaintiff and reviewed her entire medical file concluded that the plaintiff was
8   unemployable in any capacity;

9   **H**) That responsive to Lincoln Life's complaints that the plaintiff had not sufficiently
10  demonstrated functional restriction, the plaintiff had also undergone an extensive
11  vocational analysis by a credentialed and experienced expert who concluded that the
12  plaintiff could not sustain full-time work in any capacity in light of all medical and
13  restrictions evidence of record, and notably also in light of the number of prospective
14  monthly work-absences resulting from the plaintiff's medical conditions.

15                             XXV.

16
17         Pursuant to the arguments and evidence referenced in the above
    paragraphs, plaintiff Gilliland Hughes requested that Lincoln Life reverse the October
18
    7, 2019 denial and reinstate the subject benefits.
19
20                             XXVI.

21         On or about May 19, 2020, following Plaintiff Gilliland Hughes's
22  submission of all of this medical, functional and vocational evidence, Lincoln Life
23  advised the plaintiff that a new paper-review consultant (Benjamin Kretzmann M.D.)
24  had on or about May 8, 2020, reviewed the plaintiff's evidence, including the
25  additional appeal evidence, and concluded that the plaintiff should be able to work
26  because she had no swelling in her knuckles, and in his opinion also had no
27  mobilization issues.

28

XXVII.

Contemporaneously with reviewer-Kretzmann's opinion referenced in the prior paragraph, Lincoln Life's own vocational analyst (Jason Miller) reviewed the same evidence of record and essentially concluded that only "part-time positions exist for the claimant's position", therein failing to support in Miller's opinion the notion that the plaintiff could sustain full-time work as necessary to deny the claim under the pertinent LTD disability provisions.

XXVIII.

In response to the afore-referenced post-appeal (late-May 2020) reports of Kretzmann and Miller, on or about June 23, 2020, the plaintiff transmitted further responses with additional evidence specifically addressing the assertions by reviewer-Kretzmann, including clarifications from treating Rheumatologist Allabban and from the plaintiff's functional capacity examiner, Patrick O'Brien, DPT., that not all patients with severe Rheumatoid Arthritis will present with knuckles deformities, and that the lack of deformity also does not reduce the severity of pain and limitations.

XXIX.

In response to the afore-referenced clarifications from Plaintiff's rheumatologist and functional examiner, paper-review consultant Kretzman, without contacting nor consulting plaintiff's rheumatologist nor functional examiner, nor even asserting that they were wrong, and without ever physically examining nor meeting with the plaintiff, issued a June 26, 2020 addendum essentially stating that the clarifications by Plaintiff's providers had not altered his opinion, and repeated his previous conclusions that lack of knuckle deformity and supposed lack of mobilization permitted the plaintiff to work full-time.

///

XXX.

Following paper-reviewer Kretzmann's afore-referenced addendum opinion, and based in pertinent part upon that opinion, in a letter dated July 1, 2020, Defendant Lincoln Life issued a 'final denial' of Plaintiff Gilliland Hughes' claims with an explanation that her only remaining appeal recourse was to bring an action in Federal Court pursuant to the Employee Retirement Income Security Act (ERISA).

XXXI.

Since July 4, 2018, Barbara Gilliland Hughes has been "totally disabled" as such terms are defined in the subject Plans, inclusive of any waiting periods and has remained under continuous medical care by physicians.

XXXII.

As a result of the issuance of the final July 1, 2020 denial, all administrative remedies have been exhausted, and this matter is ripe for judicial review.

XXXIII.

That the plaintiff requests the Court declare the rights and legal obligations of the parties and declare that the Long Term Disability Plan constitutes a binding and enforceable agreement; that the plaintiff prays for full relief for accumulated and accumulating monthly benefits and interest through the conclusion of litigation.

XXXIV.

That this litigation is timely brought having followed within appropriate and/or applicable time limitations the defendant's final denial and resultant exhaustion of administrative remedies, and is appropriate for a Federal District Court deciding Short Term and Long Term Disability issues per Section 502(a)(1)(B) of ERISA.

///

**Claim for Benefits Under ERISA**

XXXV.

Defendant Lincoln Life abused its discretion because its decisions denying the plaintiff's disability benefits were arbitrary and capricious and have no rational support in the evidence, and were caused or influenced by Lincoln Life's consultants' financial conflicts of interest and also by Lincoln Life's and/or the Plan' own inherent financial conflict(s) of interest that arise from Policyholder Liberty Mutual's grant of discretion to Defendant Lincoln Life to determine eligibility for benefits and interpret terms and provisions of the Policy.  These conflicts of interest have undermined the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. §2560.503-1(g)(1) and (h)(2).

XXXVI.

Under the *de novo* standard of review, Lincoln Life's decisions were erroneous, contrary to the Plan's terms, and contrary to the medical, functional and vocational evidence.

XXXVII.

Upon information and belief, Lincoln Life, the Plan, and the hired consultants (McPhee, Mehreni, Kretzman) and/or other consultants who evaluated the plaintiff's symptoms and conditions and limitations, also suffer from financial conflicts of interest and bias all of which has precluded a full and fair review of the plaintiff's claim.

XXXVIII.

As a rationale for denying benefits, Defendant Lincoln Life has improperly favored said hired-consultants' conclusions over the conclusions of treating physicians; specifically that in reaching their conclusions, defendant Lincoln Life's physician consultants failed to consider all of the plaintiff's signs, symptoms,

impairments and limitations.

### XXXIX.

That the defendant's consultants' opinions are so conclusory, unsubstantiated and against the weight of the evidence as to indicate that said consultants were improperly influenced by Lincoln Life to support a benefits denial and/or that said consultants had a financial interest in supporting the claim denial in order to ensure repeat business, which infected the claims process and constitutes a procedural irregularity under ERISA that denied the plaintiff the full and fair review to which she is entitled.

### XL.

That the plaintiff is entitled to discovery regarding the effects of the procedural irregularities evidencing conflicts of interest that occurred during the claims handling process and also regarding the effects of Lincoln Life's consultants and Lincoln Life's and/or the subject Plan's financial conflicts of interest upon the claim denials.

### XLI.

That the plaintiff has been injured and has suffered damages in the form of lost LTD benefits as a result of the defendant's wrongful actions and decision to deny the plaintiff disability benefits.

### XLII.

Pursuant to ERISA, 29 U.S.C. § 1132, the plaintiff is entitled to recover unpaid disability benefits, prejudgment interest, reasonable attorney's fees, and costs from Defendant and/or is entitled to an order enforcing her right to disability benefits under the subject LTD plan.

### XLIII.

As a direct and proximate result thereof, based upon the evidence

submitted by Plaintiff to Defendant establishing that Plaintiff has met the LTD Plan's requisite disability definitions continuously since July 4, 2018, Plaintiff is entitled to her monthly disability insurance payments retroactive to April 23, 2019 when Lincoln Life denied further and/or ongoing LTD benefits.

XLIV.

The plaintiff has further been injured and suffered damages by losing other benefits to which she may have been entitled under her employer's ERISA-governed benefits plans.

XLV.

Upon information and belief, the Plan and/or group control number 511 also contains a waiver of premium benefit on certain life insurance benefits and policies to which the plaintiff is entitled if disabled as alleged in the causes of action heretofore, and that in connection with the denial of the subject LTD benefits, the plaintiff was notified that she no longer met eligibility requirements for said premium waiver, and therefore has already lost or soon will lose the substantial ERISA benefit of said life insurance policies.

XLVI.

That the Defendant, Lincoln Life, the Plans and Employer Liberty Mutual, stand as fiduciaries to one another and to the plaintiff, and each has the power to bind the other, as agents.

XLVII.

That the actions of Defendant are a breach of contractual and/or fiduciary duties inuring to the subject Plan pursuant to the requirements of 29 U.S.C. §502(a)(1)(B).

XLVIII.

That the defendant's actions are an unwarranted breach of the subject

Long Term Disability Plan, representations by Plan(s)' documents, ERISA, and the contract(s) of insurance, and have caused and continue to cause the plaintiff great financial hardship, and that the plaintiff meets the subject and requisite disability definition(s) and provisions of the "own" occupation and/or "any" occupation policy provisions of the subject LTD Plan, with special essential duties and hourly provisions

XLIX.

That the plaintiff's damages are at least $57,600.00 to date and accumulating, currently calculated under the subject Plan as $3,200.00 (60% of a $5,300.00 gross monthly salary), multiplied by the approximate 18 months elapsed since April 23, 2019, the date after which Defendant Lincoln Life denied further benefit payments.

WHEREFORE, the Plaintiff Gilliland Hughes prays judgment as follows:

A. For a judgment for benefits and an Order such benefits continue, per applicable ERISA provisions, including 29 U.S.C. § 1132(g)(2).

B. For $3,200.00 per month for LTD benefits from April 23, 2019 and ongoing, through judgment and post-judgment as appropriate, and all monthly payments and accumulated interest due from day of judgment.

C. For declaratory judgment granting Plaintiff all rights and benefits under the written Policies/Plans, and to award the plaintiff a money judgment for all sums due and owing with interest from time of breach; and/or an order enforcing the plaintiff's right to benefits under the subject Plans;

D. For all other damages as may be just and proper under Arizona State law or developing ERISA and/or other Federal case and statutory law.

E. For attorney fees, pursuant to ERISA, see 29 USC § 1132(g)(1).

F. For appropriate relief under 29 USC § 502(a)(1)(B), to redress such violations, or

to enforce any provision of this title or the terms of the Plans.

G. For reimbursement for any funds paid by Plaintiff or due the plaintiff for the continuation of life insurance policies as an employee benefit dependent upon STD//LTD-eligibility on behalf of the plaintiff and any dependents, and, in the eventuality of Plaintiff's death during the pendency of this litigation, to full payment on all policies to the named beneficiaries.

H. For costs and disbursements of this action and interest on all sums owed until payment.

DATED this 26th day of October 2020.

THE LAW OFFICE OF PAUL J. DOMBECK, PLLC

By  s/  Paul J. Dombeck

PAUL J. DOMBECK, ESQ.
18444 North 25th Avenue, Ste 420
Phoenix, Arizona  85023
Attorney for Plaintiff

By  s/ Tatiana M. Froes

TATIANA M FROES, ESQ.
18444 North 25th Avenue, Ste 420
Phoenix, Arizona  85023
Attorney for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2020, I electronically transmitted the attached documents to the Court Clerk's Office using the CM/ECF System for filing and transmittal of a Parties' Civil Coversheet, Summons and Complaint.


s/ Paul J. Dombeck

Paul J. Dombeck